# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **TIFFANY PARADISE,** | § | |
| **o/b/o her minor son, H.W.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-cv-666** |
| | § | |
| **MATTHEW WHEELER,** | § | |
| **JAKE MONTGOMERY,** | § | |
| **GERADE TELESKO,** | § | |
| **MICHAEL BERRY,** | § | |
| **AUSTIN CLARK,** | § | |
| **BRADLEY FORTUNE,** | § | |
| **JORDAN POTTER, and** | § | |
| **TRACY TALKINGTON,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Tiffany Paradise on behalf of her minor son, H.W., complaining of Matthew Wheeler, Jake Montgomery, and Gerade Telesko, Michael Berry, Austin Clark, Bradley Fortune, Jordan Potter, and Tracy Talkington, and for causes of action will respectfully show unto the Court as follows:

> "[A] constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."

*Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

## SUMMARY

On August 3, 2020, H.W., a twelve-year-old Caucasian boy, was playing with a bright orange and blue nerf gun in his neighborhood. Defendant Matthew Wheeler, an officer with the City of Keller Police Department, responded to H.W.'s neighborhood after receiving a report about a Hispanic male age 16-20 with a possible black gun. Defendant Wheeler spotted H.W., exited his car and began running toward him. Defendant Wheeler then ordered H.W. – again, a 12-year-old Caucasian boy, to drop what he was holding and get on the ground. H.W., confused and scared, complied by dropping his orange and blue nerf gun, dropping to his knees, and putting his hands up into the air above his head.

Defendant Wheeler then tackled H.W. to the ground and placed his knee in H.W.'s back causing H.W. to suffer pain and injuries. This was an unnecessary and unreasonable use of force used against H.W. that was clearly excessive to the need. Following the use of excessive force, Defendant Wheeler kept H.W. in handcuffs until his mother, Tiffany Paradise, came to the scene where H.W. was released without any criminal charges. Despite H.W. not committing a crime and not presenting a threat, Defendant Wheeler and Defendant Officers Jake Montgomery and Gerade Telesko forced the 12-year-old H.W. to sit on the curb, restrained in handcuffs, with his legs crossed like he was a hardened criminal until his mother arrived and requested the handcuffs be removed so H.W. could leave.

When H.W.'s parents requested the video of the use of force, they were told the video had been deleted and that Defendant Wheeler did not complete a use of force report. The video was destroyed following viewing and discussions of the video and incident between Defendant Wheeler, Defendant Lieutenant Michael Berry, Defendant Corporal Austin Clark, Defendant Chief of Police Bradley Fortune, Defendant Defensive Tactics

Instructor Jordan Potter, and Defendant Captain Tracy Talkington. It is believed that these Defendants conspired to have the video destroyed so that Internal Affairs would not see the video during their investigation and as a way to interfere with H.W.'s right to access to court by destroying his best evidence of the excessive use of force.

Tiffany Paradise now files this lawsuit on H.W.'s behalf for violation of H.W.'s rights to be free from excessive force and illegal detention under the Fourth Amendment and interference to his right to access court under the Fourteenth Amendment to the United States Constitution.

# I.
## PARTIES

1.     Plaintiff is a resident of Keller, Texas.

2.     Defendant Matthew Wheeler is an individual who at all times relevant to this lawsuit was an officer with the Keller Police Department in Keller, Texas. Defendant Wheeler resides in Oklahoma City, Oklahoma and may be served wherever he may be found. Defendant Wheeler is being sued in his individual capacity.

3.     Defendant Jake Montgomery is an individual residing in Keller, Tarrant County, Texas and is a police officer with the City of Keller Police Department and may be served at his place of employment at the Keller Police Department located at 330 Rufe Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Montgomery is being sued in his individual capacity.

4.     Defendant Gerade Telesko is an individual residing in Keller, Tarrant County, Texas and is a police officer with the City of Keller Police Department and may be served at his place of employment at the Keller Police Department located at 330 Rufe

Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Telesko is being sued in his individual capacity.

5.      Defendant Michael Berry is an individual residing in Keller, Tarrant County, Texas and is a police officer with the City of Keller Police Department and may be served at his place of employment at the Keller Police Department located at 330 Rufe Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Berry is being sued in his individual capacity.

6.      Defendant Austin Clark is an individual residing in Keller, Tarrant County, Texas and is a police officer with the City of Keller Police Department and may be served at his place of employment at the Keller Police Department located at 330 Rufe Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Clark is being sued in his individual capacity.

7.      Defendant Bradley Fortune is an individual residing in Keller, Tarrant County, Texas and is Chief of Police with the City of Keller Police Department and may be served at his place of employment at the Keller Police Department located at 330 Rufe Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Fortune is being sued in his individual capacity.

8.      Defendant Jordon Potter is an individual residing in Keller, Tarrant County, Texas and is a police officer with the City of Keller Police Department and may be served at his place of employment at the Keller Police Department located at 330 Rufe Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Potter is being sued in his individual capacity.

9.      Defendant Tracy Talkington is an individual residing in Keller, Tarrant County, Texas and is a police officer with the City of Keller Police Department and may

be served at his place of employment at the Keller Police Department located at 330 Rufe Snow Dr., Keller, TX 76248 or wherever he may be found. Defendant Talkington is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

10.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

11.    Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants reside in the Northern District of Texas and all of the causes of action accrued in the Northern District of Texas.

## III.
## FACTS AND ALLEGATIONS

12.    On August 3, 2020, H.W. was <u>a twelve-year-old</u> boy living in Keller, Texas.

13.    That day, H.W. was playing in his neighborhood with a <u>bright orange and blue nerf gun</u>. Below is an image of H.W.'s bright orange and blue nerf gun.



14.    Keller Police Officers, including Defendant Officer Matthew Wheeler, responded to H.W.'s neighborhood after receiving a call about a <u>Hispanic</u> male age <u>16-20</u> with a <u>possible black gun.</u>

15.    The call notes stated the suspect was wearing a <u>black hoodie</u>.

16.    HW. was wearing a <u>gray jacket</u>.

17.    H.W. is Caucasian – not Hispanic.

18.    H.W. was 12 years old – not 16-20 years old.

19.    H.W. had a bright orange and blue nerf gun – not a black gun.

20.    H.W. turned to see a patrol car coming down the street in his neighborhood.

21.    H.W. ran around the corner of the street as he knew of no reason the police officers would be looking for him and wanted to get out of the officers' way.

22.    Defendant Wheeler exited his marked patrol vehicle and ran toward H.W.

23.    H.W. turned around a few seconds later to make sure he was not in the officers' way and saw Defendant Wheeler running toward him.

24.    Defendant Wheeler shouted for H.W. to "get on the ground."

25.    H.W. immediately complied with Defendant Wheeler's order to get on the ground by dropping to his knees, pulling his earbuds from his ears, placing his hands up above his head and throwing his blue and orange nerf gun on the ground next to him in full view of Defendant Wheeler.

26.    When 12-year-old H.W. dropped to his knees and threw his orange and blue nerf gun to the ground, Defendant Wheeler was still around 20 to 25 feet away running toward H.W. screaming at him.

27.    H.W. estimates 20 to 25 feet based on the length of the entry and dining room of his home.

28.    Despite H.W.'s compliance with the order to get on the ground with plenty of time for Defendant Wheeler to see that H.W. was not the person he was looking for or

presenting a threat in any way, Defendant Wheeler ran behind H.W. tackled him to the ground, placed knee pressure on his back and handcuffed H.W.

29.     According to an incident report, "through the investigation, **no offense was committed,** and the subject was released to his mother's care."

30.     When Defendant Wheeler was on top of H.W., Defendant Wheeler asked him "Why you running man?" to which H.W. responded, "I'm sorry I didn't know you were coming for me." Defendant Wheeler then said, "Don't fucking lie to me."

31.     Defendant Wheeler was yelling and cussing at a 12-year-old boy after tackling him to the ground and forcefully handcuffing him despite no crime being committed and H.W. complying with orders.

32.     When Defendant Wheeler tackled H.W. to the ground, H.W. was not evading arrest not resisting arrest as he was on the ground, stationary, with his hands up above his head, in full view of Defendant Wheeler.

33.     When Defendant Wheeler tackled H.W. to the ground, H.W. was not a danger to Defendant Wheeler or any other person as he simply had a nerf gun which H.W. threw to the ground in full view of Defendant Wheeler.

34.     Defendant Wheeler was much larger than H.W. and due to H.W.'s small stature and the fact that he was only 12 years old, he was not physically imposing or threatening to Defendant Wheeler.

35.     As a result of Defendant Wheeler's use of force, H.W. suffered injuries including shoulder pain and scratches as well as mental anguish requiring counseling.

36.     Defendant Wheeler's incident report acknowledges that the subject [H.W.] fell to his knees after Wheeler shouted to get on the ground.

37.    Defendant Wheeler's incident report acknowledges that the subject [H.W.] remained scared but complaint when Officer Wheeler lunged toward him.

38.    The following is a screen capture of the narrative in the incident report.

the scene. Officer Wheeler made contact with the subject at 200 Parkview. Officer Wheeler can be seen on BWC exiting his vehicle and running toward the subject shouting commands to get on the ground. The subject can be seen falling to his knees and dipping his right hand towards his right side waist line. At that moment, Officer Wheeler gave commands for the subject not to reach for anything. Officer Wheeler then lunged toward the subject, who remained scared but compliant, and approached from the subject's right/front. Officer Wheeler grabbed the subject's right arm with both hands and moved the subject's arm to his back, while re-positioning his left hand to the back of the subject's neck. The subject was pushed to the ground and held there momentarily until the subject's left hand could be brought to the small of his back. The subject was then placed in handcuffs without incident.

39.    The following is another screen capture of the incident report.

| Employee: Wheeler, Matthew S | Subject |
|---|---|
| Subject Response | No Response |
| Effects of Use of Force on Subject | Stopped Resistance |
| Baton | |
| Type of Strike | |
| Baton Type | |
| Baton Type (Other) | |
| Baton Length (Inches) | |
| Type of Round | |
| Number of Rounds | |
| Police Canine | |
| Canine Bite Location | |
| Chemical Spray | |
| Distance From Subject | |
| Duration | |
| # of Times Sprayed | |
| Chemical Spray Effective | |
| Reason Force Was Used | Affecting Arrest; Preventing Escape; Protecting Self from Assault |
| All Force Types Used | Miscellaneous Physical Force |
| Type of Force Used - Effective | Miscellaneous Physical Force |
| Type of Force Used - Ineffective | |
| Type of Force Used Causing Injury | |
| Last Level of Force That Established Control | Miscellaneous Physical Force |
| ECD Serial Number | |

Page 1 of 5 on 1/29/2021 3:54:38 PM

40.    Defendant Wheeler stated in his report that the subject [H.W.] gave no response; however, in the narrative, Defendant Wheeler admitted that H.W. dropped to his knees and was complaint.

41.     Defendant Wheeler stated in his report that the effect of his use of force on the subject [H.W.] was that the subject stopped resistance; however, in the narrative, Defendant Wheeler admitted that H.W. dropped to his knees and was complaint and did not make any note of H.W. resisting.

42.     The incident report also states the reason force was used was because of preventing escape and protecting self from assault; however, Defendant Wheeler even admitted in his narrative that H.W. had already dropped to his knees and was complaint.

43.     Defendant wheeler did not include in his report that H.W. was a 12-year-old Caucasian boy with a blue and orange nerf gun and not a Hispanic 16-20 year old suspect with a black gun that was the reason for the call.

44.     After tackling, handcuffing, and yelling at the 12-year-old H.W., Defendant Wheeler made H.W. sit on a curb with his legs crossed and his hands restrained in handcuffs until his mother, Tiffany Paradise arrived.

45.     The officer released the scared, crying, and hurt boy to his mother.

46.     Defendant Wheeler was at all times acting under the color of law as he was on duty in full uniform responding to a service call when he used force against and detained H.W. in handcuffs.

## **Prolonged Detention**

47.     According to call notes, at 18:25:39 Defendant Wheeler and Defendant Officer Jake Montgomery detained H.W.

48.     When Defendant Wheeler detained H.W. he placed him into handcuffs.

49.     According to call notes, at 18:26:11 the officers, including Defendants Wheeler, Montgomery, and Gerade Telesko, were aware that H.W. only had a nerf gun.

50.    At this time, Defendants Wheeler and Montgomery had the ability to have the handcuffs removed or to remove them themselves once they knew that H.W. was not a threat, did not match the suspect in the call notes, was not armed with a weapon, and had committed no crime; however, neither Defendant Wheeler nor Defendant Montgomery removed the handcuffs or had the handcuffs removed.

51.    It was readily apparent that H.W. was a young child and not a 16-20 year old man as the suspect was described in the call for service.

52.    It was readily apparent that H.W. was Caucasian and not Hispanic as the suspect was described in the call for service.

53.    Defendant Wheeler stated on his application for employment with the Keller Police Department that he previously "taught and mentored 12-14 year old boys," which means Defendant Wheeler should have been able to tell that H.W. was a young boy around 12 years of age even more than the average person who would have been able to tell the difference between H.W. and a 16-20 year old man.

54.    According to call notes, at 18:30:47, Defendant Officer Telesko read H.W. his Miranda rights – indicating H.W. was still in custody at that time, five minutes after being restrained in handcuffs and then searched with no gun being found.

55.    Defendant Telesko had the ability to have the handcuffs removed or to remove them himself as he spoke to H.W. with the knowledge that H.W. was not a threat, did not match the suspect in the call notes, was not armed with a weapon, and had committed no crime; however, Defendant Telesko did not remove the handcuffs or have the handcuffs removed.

56.    According to call notes, at 18:31:11 officers called H.W.'s mother, Tiffany Paradise.

57.     According to call notes, at 18:39:09 H.W.'s mother arrived on scene.

58.     When H.W.'s mother arrived on scene, H.W. was sitting on the curb with his legs crossed in front of him and his hands restrained in handcuffs.

59.     Officers then began talking to H.W.'s mother leaving him seated and restrained in handcuffs, despite there being no legal justification to continue his detention, as he was a 12-year-old boy who was not a threat, did not match the suspect in the call notes, was not armed with a weapon, and had committed no crime.

60.     When H.W.'s mother was able to see H.W., she noted that he was dirty, crying, and had scratches on his face from Defendant Wheeler's use of excessive force.

61.     The officers, including Defendants Wheeler, Telesko, and Montgomery, continued detaining H.W. in handcuffs until H.W.'s mother requested he be released.

62.     This means that Defendants Wheeler, Telesko, and Montgomery continued restraining H.W. in handcuffs against his will for over 15 minutes after learning that H.W. was a 12-year-old boy who was not a threat, did not match the suspect in the call notes, was not armed with a weapon, and had committed no crime.

63.     The officers did not require anything else from H.W. or his mother prior to releasing him from the handcuffs upon being requested by H.W.'s mother, which indicates they could have removed the handcuffs prior to her request.

64.     Prior to the handcuffs being removed only after H.W.'s mother requested them to be removed, Defendants Wheeler, Montgomery, and Telesko all had the ability to have the handcuffs removed or to remove them themselves once they knew that H.W. was not a threat, did not match the suspect in the call notes, was not armed with a weapon, and had committed no crime; however, Defendant Wheeler, Defendant Montgomery, and Defendant Telesko all allowed H.W. to remain in custody in handcuffs.

## Conspiracy to Delete Video to Interfere with Right of Access to Courts

65.    After the incident, H.W.'s father called Keller Police Officer Blake Shimanek[1] to ask him to review the body cam footage of the incident with his son.

66.    Shimanek told H.W.'s father that after reviewing the video, the footage would be hard for the parents to watch due to Defendant Wheeler's use of force against H.W.

67.    However, Shimanek told H.W.'s father that Shimanek believed nothing about the use of force was inappropriate.

68.    Then, after Shimanek's shocking use of force lawsuit received national attention, H.W.'s parents decided they should view the video themselves to determine if the use of force was appropriate since they no longer trusted Shimanek's opinion on what use of force was and was not appropriate.

69.    H.W.'s parents filed a complaint with the Keller Police Department against Defendant Wheeler and Corporal A. Clark and requested to view a video capturing the incident as they were troubled by reports of Officer Shimanek's excessive use of force and his dismissal of their concerns about Defendant Wheeler's excessive use of force against H.W. based on what H.W. had told them happened.

70.    Interestingly, H.W.'s parents were informed that the video footage related to Defendant Wheeler's use of force against H.W. were "no longer available."

71.    This is because the video footage of Defendant Wheeler's excessive use of force against H.W. was destroyed.

---

[1] Blake Shimanek is no longer a Keller Police Officer after resigning following resolution of a lawsuit involving Shimanek's shocking excessive use of force while on duty for the Keller Police Department.

72.     Below is a screenshot of the incident report which shows the link to the body worn camera (BWC) video of Defendant Wheeler's use of force against H.W. on August 3, 2020.

**Related Incident**

**Attachments**

| Type: | Video | | Description: | BWC |
|---|---|---|---|---|
| | Date: | 8/3/2020 | Number: | WFC1-040787 |
| | Location: | 200 Parkview | | |
| | Link: | | | |
| | Notes: | https://watchguard.cityofkeller.com/#eventPlayback/8b99771688094c239d03ba39b6adee 86?autoplay=true | | |

73.     Thus, the video existed for Shimanek to review and there is a link to the video – however, the video was deleted before the parents could see it, in violation of Keller's policy to maintain video of uses of force against minors, such as H.W.

74.     Additionally, the video was not reviewed during the Internal Affairs investigation finding that the use of force was unfounded, instead the investigation simply relied on the report and interviews with the officers.

75.     In a letter to H.W.'s mother, Mrs. Paradise, Sergeant Darrell Potts of the Professional Standards Unit in Keller stated, "A thorough investigation was conducted into this matter. The investigation included a review of all reports, calls for service, and interviews with officers that were on scene during the incident." Notably absent from the materials reviewed were the videos.

76.     In this same letter, Sergeant Potts acknowledged the video was deleted.

77.     Interestingly, the video of Defendant Wheeler's use of force was seen in the days after the use of force occurred, when being reviewed by Defendant Lieutenant Michael Berry, Defendant Corporal Austin Clark, Defendant Chief of Police Bradley

Fortune, Defendant Defensive Tactics Instructor Jordan Potter, and Defendant Captain Tracy Talkington.

## Related Incident

## Attachments

| Type: | Video | Description: | BWC |
| --- | --- | --- | --- |
| Date: | 8/3/2020 | Number: | WFC1-040787 |
| Location: | 200 Parkview | | |
| Link: | | | |
| Notes: | https://watchguard.cityofkeller.com/#eventPlayback/8b99771688094c239d03ba39b6adee86?autoplay=true | | |

## Electronic Signature

| Berry, Michael | 0065 | Police | 8/6/2020 |
| --- | --- | --- | --- |
| Notes: | | | |
| Clark, Austin | 1112 | Police | 8/4/2020 |
| Notes: | | | |
| Fortune, Bradley | 9281 | Police | 9/23/2020 |
| Notes: | | | |
| Potter, Jordan M | 4523 | Police | 8/19/2020 |
| Notes: | | | |
| Talkington, Tracy | 5300 | Police | 8/18/2020 |
| Notes: | | | |

78.    Below is a snapshot from the narrative section of the report associated with the review of the incident and use of force by Defendant Wheeler against H.W. that forms the basis for this lawsuit. "BWC" stands for Body Worn Camera – the same Body Worn Camera video which has since been destroyed.

the scene. Officer Wheeler made contact with the subject at 200 Parkview. Officer Wheeler can be seen on BWC exiting his vehicle and running toward the subject shouting commands to get on the ground. The subject can be seen falling to his knees

79.    Defendant Lieutenant Michael Berry was involved in the review of the incident along with the body worn camera video in the days following the use of force by Defendant Wheeler.

80.     Defendant Berry recommended in the report that Defendant Wheeler's conduct was "in compliance w/ general orders."

81.     Defendant Corporal Austin Clark was involved in the review of the incident along with the body worn camera video in the days following the use of force by Defendant Wheeler.

82.     Defendant Clark recommended in the report that Defendant Wheeler's conduct was "in compliance w/ general orders."

83.     Defendant Chief of Police Bradley Fortune was involved in the review of the incident along with the body worn camera video in the days following the use of force by Defendant Wheeler.

84.     Defendant Fortune recommended in the report that Defendant Wheeler's conduct was "in compliance w/ general orders."

85.     Defendant Defensive Tactics Instructor Jordan Potter was involved in the review of the incident along with the body worn camera video in the days following the use of force by Defendant Wheeler.

86.     Defendant Potter recommended in the report that Defendant Wheeler's conduct was "in compliance w/ general orders."

87.     Defendant Captain Tracy Talkington was involved in the review of the incident along with the body worn camera video in the days following the use of force by Defendant Wheeler.

88.     Defendant Talkington recommended in the report that Defendant Wheeler's conduct was "in compliance w/ general orders."

89.     However, in the narrative of the report following the review, it states a version of events that did not occur and is contradicted by not only H.W. but also former

Keller Officer Shimanek who stated to H.W.'s father the footage would be hard for the parents to watch due to Defendant Wheeler's use of force against H.W.

90.    Below is a snapshot of the narrative section of the report associated with the review of the incident and use of force by Defendant Wheeler against H.W. that forms the basis for this lawsuit.

the scene. Officer Wheeler made contact with the subject at 200 Parkview. Officer Wheeler can be seen on BWC exiting his vehicle and running toward the subject shouting commands to get on the ground. The subject can be seen falling to his knees and dipping his right hand towards his right side waist line. At that moment, Officer Wheeler gave commands for the subject not to reach for anything. Officer Wheeler then lunged toward the subject, who remained scared but compliant, and approached from the subject's right/front. Officer Wheeler grabbed the subject's right arm with both hands and moved the subject's arm to his back, while re-positioning his left hand to the back of the subject's neck. The subject was pushed to the ground and held there momentarily until the subject's left hand could be brought to the small of his back. The subject was then placed in handcuffs without incident.

91.    In the above snapshot of the report, which was used by Defendants Berry, Clark, Fortune, Potter, and Talkington to conclude that Defendant Wheeler was "in compliance w/ general orders," it states that H.W. ("The subject") "dipp[ed] his right hand towards his right side waist line."

92.    However, the truth is that, after dropping to his knees and throwing his orange and blue toy nerf gun onto the ground, H.W. put both of his hands into the air in a clear sign of surrender while facing Defendant Wheeler.

93.    Thus, this report fabricates a justification for an escalated use of force by claiming H.W. was reaching for something in his waistband, when the reality of the situation was that H.W. had both of his hands above his head.

94.    The report, which was used by Defendants Berry, Clark, Fortune, Potter, and Talkington to conclude that Defendant Wheeler was "in compliance w/ general

orders," also states that H.W. was "pushed to the ground and held there momentarily" and that he was "placed in handcuffs without incident."

95.    Thus, the report describes a minimal use of force that did not cause injuries and would have the reader believe that H.W. was simply placed onto the ground for a moment while handcuffs were applied and then picked up.

96.    However, Defendant Wheeler tackled H.W. to the ground and held him there screaming and cussing at him, despite the fact that H.W. was clearly a young child not fitting the description of the 16-20 year old male, had complied by dropping to his knees, had thrown an orange and blue toy nerf gun to the ground, and had both of his hands raised in the air above his head while Defendant Wheeler was 20-25 feet away from him giving Defendant Wheeler ample time to recognize that H.W. was not a threat or attempting to evade or resist.

97.    The report not only fabricates a justification for escalated use of force in H.W. reaching for his waist band, but then also fabricates a minimal force situation which did not occur.

98.    Evidence which supports the excessive use of force by Defendant Wheeler as H.W. states occurred are his injury to his shoulder and the scratches on his face that H.W.'s mother saw when she arrived on scene and H.W. was still in handcuffs on the curb.

99.    Additionally, the report includes Defendant Wheeler's narrative which states that Defendant Wheeler found the orange and blue nerf gun in H.W.'s pocket after detaining him in handcuffs and searching him.

for anything, I grabbed his right wrist and forced the subject to the ground. The subject was detained in handcuffs by officers and searched. During the search a multi-colored NERF gun was located in the subjects right pocket along with a cell phone, black bandana and ear pods.

100.    However, H.W. threw his orange and blue nerf gun onto the ground when he dropped to his knees and before raising his hands into the air above his head.

101.    Thus, Defendant Wheeler's narrative, which is included in the report regarding the review of the use of force used by Defendants Berry, Clark, Fortune, Potter, and Talkington to conclude that Defendant Wheeler was "in compliance w/ general orders," fabricates a version of events where Defendant Wheeler did not know that H.W. had an orange and blue nerf gun until after taking him to the ground, handcuffing him, and searching him.

102.    Upon information and belief, during the days following Defendant Wheeler's use of force, when Defendants Berry, Clark, Fortune, Potter, and Talkington were reviewing the video and evidence regarding the use of force, Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler discussed and agreed to delete the video in violation of the policy to retain videos involving uses of force against minors, in an effort to conceal Defendant Wheeler's excessive use of force against H.W. in an attempt to prohibit H.W. from bringing a successful lawsuit against Defendant Wheeler or the City of Keller.

103.    Additionally, a use of force report was not completed despite Keller's policy requiring a use of force report when force is used on a minor.

104.    Upon information and belief, during the days following Defendant Wheeler's use of force when Defendants Berry, Clark, Fortune, Potter, and Talkington were reviewing the evidence regarding the use of force, Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler discussed and agreed that Defendant Wheeler would not complete a use of force report because they were aware that Defendant Wheeler was not justified in using the amount of force he used against H.W. on August 3, 2020. This

decision was made in an effort to conceal Defendant Wheeler's excessive use of force against H.W. in an attempt to prohibit H.W. from bringing a successful lawsuit against Defendant Wheeler or the City of Keller.

105.    Subsequent to these discussions and agreements to destroy the video so that it could not be used by H.W. in a lawsuit against Defendant Wheeler or the City of Keller, Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler then actually caused the video to be destroyed/deleted to prohibit H.W. from bringing a successful lawsuit against Defendant Wheeler or the City of Keller for Defendant Wheeler's use of excessive force, which they were aware was not justified and was unnecessary and unreasonable.

106.    Defendant Wheeler no longer works for the Keller Police Department.

## IV.
## CAUSES OF ACTION

### Count One

### Excessive Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Wheeler

107.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

108.    Acting under the color of law, Defendant Wheeler deprived H.W. of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

109.    Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

110.    The amount of force used by Defendant Wheeler against H.W. as described above, specifically but not limited to, when Defendant Wheeler tackled H.W. to the

ground, placed knee pressure on his back, and handcuffed H.W was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon H.W.

111.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

112.    A constitutional violation occurs when an officer tases, strikes, or **violently slams an arrestee who is not actively resisting arrest**. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

113.    Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

114.    Fifth Circuit case law also makes clear that it is objectively unreasonable for an officer to slam an arrestee when the arrestee "was not resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

115.    Additionally, Fifth Circuit case law is clear that an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased. *Lytle v Bexar Cty., Tex..*, 560 F.3d 404, 413 (5th Cir. 2009).

116.    Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2002); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

117.     H.W. was not suspected of committing a felony offense when Defendant Wheeler tackled H.W. to the ground, placed knee pressure on his back and handcuffed H.W.

118.     H.W. was not attempting to flee, as he did not make any motions indicating an attempt to escape when he dropped down on his knees and put his hands above his head in full view of Defendant Wheeler while Defendant Wheeler was 20 to 25 feet away.

119.     H.W. was not threatening any officer or other person immediately prior to when Defendant Wheeler tackled H.W. to the ground, placed knee pressure on his back and handcuffed H.W, as H.W. never raised his voice nor made any verbal threats toward Defendant Wheeler or any other person, had already dropped to his knees and dropped his orange and blue nerf gun onto the ground, did not match the description of the suspect in the service call, and was a small 12 year old boy.

120.     H.W. was not resisting arrest prior to when Defendant Wheeler tackled H.W. to the ground, placed knee pressure on his back and handcuffed H.W. as he got on his knees, pulled his earbuds from his ears, placed his hands up above his head and threw his nerf gun on the ground next to him in full view of Defendant Wheeler.

121.     A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as H.W. who was not threatening any officer or other person, was not suspected of committing any crime, was not attempting to flee, was not resisting arrest, and who the use of force was not warranted.

122.     A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as H.W., who was not threatening any officer or other person, was not suspected of committing any crime, was not attempting to flee, was not resisting arrest, and who the use of force was not warranted.

123.    A reasonable officer in Defendant Wheeler's position would know that tackling H.W. to the ground, placing knee pressure in his back and handcuffing H.W. was objectively unreasonable when H.W. was not suspected of committing any crime, was not attempting to flee, was not actively resisting arrest, and was a small 12-year-old boy who did not match the description of the service call is clearly unreasonable and excessive.

124.    According to an incident report, "through the investigation, **no offense was committed** and the subject was released to his mother's care."

125.    As a direct result of the force used against him by Defendant Wheeler H.W. has suffered physical injury, pain, and mental anguish for which he sues herein.

126.    These injuries were not caused by any other means.

## Count Two

### Illegal Detention
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendants Wheeler, Montgomery, and Telesko

127.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

128.    No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

129.    Unlawful detention implicates the Fourth Amendment's proscription against unreasonable seizures. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009) See *Terry*, 392 U.S. at 16 ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

130.    Under the two-part Terry reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20; *United States v. Brigham*, 382 F.3d 500, 506-07 (5th Cir.2004) (en banc); *U.S. v. Lopez–Moreno*, 420 F.3d 420, 429–434 (5th Cir.2005).

131.    The Supreme Court has stated that in making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

132.    Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir.2002).

133.    In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvizu*, 534 U.S. at 274.

134.    In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27.

135.    As for the second prong of the *Terry* inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507.

136.    Defendant Wheeler deprived H.W. of his constitutionally protected right to be free from unreasonable searches and seizures under the Fourth Amendment.

137.    Defendant Wheeler intentionally detained Plaintiff without a warrant, without H.W.'s consent, and without any legal justification.

138.    H.W. did not consent to his confinement and was conscious of it.

139.    Defendant Wheeler willfully detained H.W. by restraining H.W. in handcuffs and forcing him to sit on the curb with his legs crossed.

140.    H.W. did not consent to the detention, to being restrained in handcuffs, or to being restrained in the patrol vehicle.

141.    Defendant Wheeler did not have probable cause to support detaining H.W.

142.    Defendant Wheeler did not have authority of law to detain H.W.

143.    By knowingly and intentionally detaining H.W. without consent, without probable cause, and without legal justification, Defendant Wheeler deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

144.    To prevail on a claim for unlawful seizure a plaintiff must allege facts that if true show that the defendant police officer lacked reasonable suspicion to detain or probable cause to arrest the Plaintiff. *Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (discussing showing of no probable cause with respect to claim for unlawful seizure).

145.    Under *Terry*, an officer may temporarily detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. See *Illinois v. Wardlaw*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (reiterating that reasonable suspicion is ―more than an ‗inchoate and unparticularized suspicion or hunch' of criminal activity‖); *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989); *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000).

146.    After completion of the purposes of the initial stop, the officer must have reasonable suspicion to believe that further criminal activity has occurred or is being committed to justify further detention of the suspect. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (en banc); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd; *Sieffert v. State*, 290 S.W.3d 478, 485–86 (Tex. App.—Amarillo 2009, no pet.).

147.    After Defendants Wheeler and Montgomery determined that H.W. did not possess a gun and did not match the description of the suspect they were called to investigate, the reason for the initial contact had concluded. However, Defendants Wheeler and Montgomery then intentionally detained H.W. without a warrant, without H.W.'s consent, and without any legal justification as Defendants Wheeler and Montgomery forced H.W. to sit on the curb with his legs crossed and his hands restrained in handcuffs.

148.    Defendant Telesko then read H.W. the Miranda warning while H.W. remained in handcuffs.

149.    When Defendant Telesko read H.W. the Miranda warning, it was clear to Defendant Telesko that H.W. did not possess a gun other than a blue and orange toy nerf gun and did not match the description of the suspect they were called to investigate; thus, the reason for the initial contact had concluded with no further reason to detain H.W. at that point.

150.    However, Defendant Telesko then intentionally detained H.W. without a warrant, without H.W.'s consent, and without any legal justification as Defendant Telesko forced H.W. to sit on the curb with his legs crossed and his hands restrained in handcuffs after being read the Miranda warning.

151.    Defendants Wheeler, Montgomery, and Telesko did not have probable cause nor reasonable suspicion to support detaining H.W., after learning that H.W. did not possess a weapon, was a 12-year-old boy, and was not the suspect he was called to investigate, as H.W. was not suspected of committing a crime or in the process of committing a crime when he was forced to remain in handcuffs on the curb.

152.    By knowingly and intentionally detaining Plaintiff without consent, without probable cause, and without legal justification, Defendants Wheeler, Montgomery, and Telesko deprived H.W. of his Fourth Amendment right to be free from unreasonable seizures.

153.    As a result of the illegal detention, H.W. suffered injuries and losses to his rights and freedoms.

154.    As a result of the illegal detention, Defendants Wheeler, Montgomery, and Telesko deprived H.W. of his civil, constitutional, and statutory rights and are liable to H.W. under 42 U.S.C. § 1983.

155.    Plaintiff was damaged as a result of Defendant Wheeler's, Defendant Montgomery's, and Defendant Telesko's wrongful acts.

## Count Three

### Conspiracy to Interfere with Right of Access to Courts
### Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler

156.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

157.    A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who

committed the particular act, but "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).

158.    The right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution. *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983).

159.    The Supreme Court views the right of access to the courts as one of the privileges and immunities accorded citizens under article 4 of the Constitution and the fourteenth amendment. *Id.*; *See Chambers v. Baltimore & Ohio Railroad*, 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907).

160.    In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court defined the right of access in a civil rights action under section 1983 in the following terms:

> The right of access to the courts, upon which *Avery* [*Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) ] was premised, is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. It is futile to contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than does the Great Writ.

*Ryland*, 708 F.2d at 972.

161.    The due process clause has also been construed to allow prisoners meaningful access to the courts. *Id.*; *See Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

162.    A mere formal right of access to the courts does not pass constitutional muster. Courts have required that the access be adequate, effective, and meaningful. *Ryland*, 708 F.2d at 972. (internal quotations omitted).

163.    Interference with the right of access to the courts gives rise to a claim for relief under section 1983. *Id.*; *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969) (destruction by jail guards of legal papers necessary for appeal supports claim for damages under § 1983).

164.    Deprivation of materials necessary to afford reasonable access to the courts violates the due process clause of Fourteenth Amendment and a federal court has jurisdiction of claim for damages based on such deprivation. *Sigafus*, 416 F.2d at 107.

165.    It is clear that, under our Constitution, the right of access to the courts is guaranteed and protected from unlawful interference and deprivations by the state, and only compelling state interests will justify such intrusions. *Ryland*, 708 F.2d at 972.

166.    An action for conspiracy may be maintained under section 1983. *Id.* at 974.

167.    "To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Bevill v. Fletcher*, 26 F.4th 270, 274–75 (5th Cir. 2022); quoting *Whisenant v. City of Haltom*, 106 F. App'x 915, 917 (5th Cir. 2004) (per curiam) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

168.    Plaintiff references the facts outlined in paragraphs 65 through 105, *supra.*, as support for Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler's agreement to destroy the video evidence of Defendant Wheeler's excessive use of force against H.W., as well as the fact that the video evidence was then actually destroyed, all for the purpose of interfering with H.W.'s right of access to court in pursuing a civil rights lawsuit against Defendant Wheeler or the City of Keller for violating his Fourth Amendment right to be free from unreasonable seizure by way of excessive force.

169.    This conspiracy between Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler was a violation of H.W.'s Fourteenth Amendment right to adequate, effective, and meaningful access to the courts. *Ryland*, 708 F.2d at 972; *Wolff*, 418 U.S. 539; *Boddie*, 401 U.S. 371; *Sigafus*, 416 F.2d at 107; *Hale*, 45 F.3d at 920; *Bevill*, 26 F.4th at 274–75; *Whisenant*, 106 F. App'x at 917.

## V.
## PUNITIVE DAMAGES

170.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

171.    When viewed objectively from the standpoint of Defendants Wheeler, Montgomery, Telesko, Berry, Clark, Fortune, Potter, and Talkington at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

172.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendants Wheeler, Montgomery, Telesko, Berry, Clark, Fortune, Potter, and Talkington which was recklessly or callously indifferent to Plaintiff's protected rights, Plaintiff is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

173.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

174.    H.W.'s injuries were a foreseeable event.

175.    Those injuries were directly and proximately caused by Defendant Wheeler's excessive and unreasonable use of force against H.W., Defendant Wheeler's,

Defendant Montgomery's, and Defendant Telesko's unlawful prolonged detention of H.W., and Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler's agreement to destroy the video evidence of Defendant Wheeler's excessive use of force against H.W. as well as the fact that the video evidence was then destroyed, all for the purpose of interfering with H.W.'s right of access to court.

176.    As a result, H.W. is entitled to recover all actual damages allowed by law. Plaintiff contends said Defendants Wheeler, Montgomery, Telesko, Berry, Clark, Fortune, Potter, and Talkington's conduct constitutes malice, evil intent, or reckless or callous indifference to H.W.'s legally protected rights.

177.    Thus, Plaintiff is entitled to punitive damages against the Defendants.

178.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, H.W. was forced to suffer:

    a.    Physical injuries,
    b.    Physical pain and suffering,
    c.    Mental anguish,
    d.    Loss of liberty, and
    e.    Loss of adequate, effective, and meaningful access to the Court.

179.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

180.    If Plaintiff prevails in this action on claims pursuant to 42 U.S.C. § 1983, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

**VIII.**
**JURY REQUEST**

181.    Plaintiff respectfully requests a jury trial.


**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which the Court finds that Plaintiff is justly entitled.


Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF