UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**TIFFANY PARADISE,**

   Plaintiff,

v.                                      No. 4:22-cv-00666-P

**MATTHEW WHEELER, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Matthew Wheeler's Motion for Summary Judgment, filed September 7, 2023. ECF No. 35. For the reasons below, the Court will **GRANT** the motion.

## BACKGROUND

On August 3, 2020, Keller Police Department Officer Matthew Wheeler responded to a 911 call from a neighborhood in Keller, Texas. An eyewitness reported being assailed at gunpoint in her driveway by a sixteen- to twenty-year-old Hispanic male wearing a black hoodie. Meanwhile, H.W.—the twelve-year-old son of Plaintiff Tiffany Paradise—was playing in a yard a few blocks away from where the incident was reported. Sporting a grey jacket, H.W. was listening to music in his earbuds and running around with a blue-and-orange nerf gun. Around this same time, Officer Wheeler saw H.W. and pursued him. H.W.—who was allegedly unaware that Officer Wheeler was pursuing him—ran around the corner to get out of the way. In response, Officer Wheeler shouted for him to get on the ground. H.W. complied, dropping to his knees and throwing away his toy.

Plaintiff alleges that—even after H.W. dropped to his knees and put his hands on his head—Officer Wheeler ran behind H.W. and tackled him to the ground. Wheeler then detained H.W. for questioning. Thirty-six seconds later, Officer Montgomery arrived at the scene. Officer Telesko arrived thirty-three seconds after Officer Montgomery. Officer

Telesko then mirandized H.W.—who was sitting on the curb handcuffed—and called Plaintiff, who arrived eight minutes later. Following the arrival of Plaintiff, H.W. was released. For their roles in H.W.'s detention, Plaintiff sued Officers Telesko and Montgomery.

Following the incident, Officer Wheeler's body camera was reviewed by Lieutenant Michael Berry, Corporal Austin Clark, Chief of Police Bradley Fortune, Tactics Instructor Jordan Potter, and Captain Tracy Talkington. A day after the incident occurred, H.W.'s father emailed the Keller Police Department requesting a copy of the body-camera footage from the incident. Two weeks later, he was told that there was a $10.00 processing fee and that the records technician would complete his request upon confirmation of payment. H.W.'s father did not reply until January 11, 2021—five months after the incident—at which time the footage was already deleted.[1] The footage was apparently mislabeled as an "encounter with a minor" instead of a "use of force" incident. Because of this discrepancy in labeling, the body-cam footage was deleted in accordance with department data-retention policies, but had it been labeled as a use of force, the footage would have been available when H.W.'s father again requested it months after the incident.

The mislabeling and subsequent deletion of the relevant body-cam footage were the bases for Plaintiff's claim against Defendants Berry, Clark, Fortune, Potter, Talkington, and Wheeler. Plaintiff asserted that the mislabeling was an intentional and agreed-to effort by Defendants to delay and frustrate Plaintiff's litigation against the department.

Plaintiff, on behalf of H.W., brought this suit two years after the incident, alleging excessive force, illegal detention, and conspiracy to interfere with the right to access courts against Officer Wheeler. ECF No. 18 at 20, 23, 27. In addition, Plaintiff pled claims of illegal detention against Officers Montgomery and Telesko (collectively "the Responding Officers") and conspiracy to interfere with the right of access to courts

---

[1] The Keller Police Department sent a letter to Plaintiff on April 14, 2021, describing the deletion of the body-cam footage as a "failure in [its] policy relating to the preservation of video evidence." ECF No. 11-4 at 1.

against Defendants Berry, Clark, Potter, and Talkington (collectively "the Administrative Defendants.") *Id.* at 23, 27.

The Responding Officers and the Administrative Defendants moved to dismiss the suit, arguing that Plaintiff failed to state a claim against them, and that Plaintiff's claims did not overcome their right to qualified immunity. ECF No. 20. The Court subsequently found the Responding Officers and Administrative Defendants were protected from suit under qualified immunity, and the claims against them were dismissed. ECF No. 33. However, Officer Wheeler had yet to file any motions at the time of that order despite his lengthened interaction with H.W. In the same Order dismissing the claims against the Responding Officer and Administrative Defendants, the Court ordered Officer Wheeler to file a dispositive motion under Rule 12(c) or Rule 56 within thirty days of that August 2023 order. *Id.* On September 7, 2023, Officer Wheeler filed a Motion for Summary Judgment claiming qualified immunity. ECF No. 35.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. Fed. R. Civ. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the

3

Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Wheeler seeks summary judgment based on qualified immunity on each of Paradise's claims: (1) excessive force; (2) unlawful detention; and (3) conspiracy to interfere with the right of access to courts. The Court addresses each in turn.

### A. Qualified Immunity

Qualified immunity "shield[s] [government officials] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When officers assert qualified immunity, a court employs a two-step analysis: (1) whether the official violated a statutory or constitutional right; and (2) whether the right was "clearly established" at the time of the challenged conduct. *Lincoln v. Turner*, 874 F.3d 833, 847–48 (5th Cir. 2017). "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that every reasonable official would understand that what he is doing violates the law." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).[2] At the summary judgment phase, when qualified immunity is invoked, the plaintiff has the burden to "demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendant[] violated the United States Constitution." *Thompson v. Upshure Cnty*, 245 F.3d 447, 460 (5th Cir. 2001).

---

[2] Though this seems straightforward, the Fifth Circuit jurisprudence surrounding qualified immunity is a morass of imprecision. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458 (5th Cir. 2022) (relying in part on extra-record sources such as the New York Times and The Guardian in finding no qualified immunity for officer's use of deadly force where suspect resisted arrest and ran over another officer with his vehicle), *with Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding qualified immunity barred suit when officers found suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames").

4

The Court first addresses the applicability of the qualified immunity defense as to Paradise's claim that Wheeler used excessive force.

1. <u>Paradise's claim of excessive force does not overcome Wheeler's qualified immunity.</u>

Paradise brings a claim of excessive force under the Fourth Amendment which creates a right to be free from excessive force during a seizure. *See* U.S. CONST.AMEND. IV; *Crane v. City of Arlington, TX*, 50 F.4th 453, 463 (5th Cir. 2022). In order to establish a claim of excessive force pursuant to the Fourth Amendment, Paradise must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009). The injury must be more than a *de minimis* injury and must be evaluated "in the context in which the force was deployed." *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001).

Here, the Court focuses its attention on "clearly excessive" and its role in prongs two and three. The Supreme Court lays out a test in *Graham* to determine what is considered reasonable or excessive force. *See Graham v. Connor,* 490 U.S. 386, 396 (1989). The Court weighs several factors including: (1) the severity of the crime in question; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* These factors are evaluated from the perspective of a reasonable officer on the scene, not with the luxury of hindsight. *Id.*

When Wheeler was called to the scene, he was under the impression that a male in a hoodie was brandishing a firearm against an individual. *See ECF* No. 39 at 12. There is little question that, while responding to this call, Wheeler would be operating under the assumption that a very severe crime is being committed—or about to be committed—with the potential for immediate threat to both him and to others in the neighborhood. Once Wheeler identified who he believed to be the suspect with the gun in question, the suspect fled by attempting to run away from Wheeler. *See id.* at 12–13. While, in reality, H.W. was not who Wheeler was looking for, Wheeler had a reasonable belief that a severe

crime was being committed (assault with a deadly weapon), the individual who he identified posed an immediate threat to the safety of himself and others (he was called to the scene and believed the individual was armed), and the individual attempted to flee when Wheeler tried to stop him. *Id.*

As explained above, the Court looks to the "reasonableness" of force from the perceptive of a reasonable officer *on the scene*, not with hindsight when all the facts have risen to the surface. *Graham,* 490 U.S. at 397. Accepting Paradise's own recollection of events, Paradise claims that Wheeler tackled her son, put his knee on his back, and handcuffed him. *See ECF* No. 39 at 13. This was after H.W. appeared to flee when Wheeler attempted to apprehend him. *See id.* at 12. Thus, in light of the above *Graham* factors, the Court does not believe the actions here rise to the level of "clearly excessive" in order to establish a claim of excessive force in the Fifth Circuit. *See Buehler v. Dear*, 27 F.4th 969, 988 (5th Cir. 2022) ("We have frequently held that officers were either constitutionally justified or entitled to qualified immunity for taking suspects to the ground in response to forms of physical resistance").

So, while H.W. might have sustained more than *de minimis* injury that injury did not result from excessive force, as none was used here. And since there was no excessive force, Paradise cannot satisfy the third prong of her Fourth Amendment violation test. Accordingly, Officer Wheeler is entitled to qualified immunity as to Paradise's Fourth Amendment excessive force claim and the Court **GRANTS** his motion for summary judgment.

2. Paradise's claim of illegal detention does not overcome Wheeler's qualified immunity.

Under the Fourth Amendment, "a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021). A claim of prolonged detention necessarily implicates whether officers detained a person in a manner that exceeded both the degree of their reasonable suspicion and in a reasonable manner and time frame for resolving that suspicion. *See Terry v. Ohio*, 392 U.S. 1 (1968).

6

Whether a seizure is a mere investigatory stop, or a full arrest determines the constitutionality of an officer's conduct. *Id.* at 9. An investigatory stop requires "reasonable suspicion," but if a stop exceeds the reasonable duration and scope required to dispel the reasonable suspicion of a crime, it turns into an unlawful arrest. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

A detention based on reasonable suspicion must be (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19–20. When an officer stops a person based on reasonable suspicion of some crime, the officer may only detain that person for as long as is necessary to investigate that crime. *United States v. Machuca-Barrera*, 261 F.3d 425, 432 (5th Cir. 2001). And the scope of an investigatory stop is limited to an investigation of the matters initially justifying that stop. *Id.*

There is no bright-line time limit to determine when a detention becomes prolonged or illegal. *See United States v. Sharpe*, 470 U.S. 675, 686 (1985). The basis of whether an investigative stop has lasted too long is whether the officers diligently pursued a means of investigation likely to dispel their suspicions quickly. *See id.* In evaluating whether Wheeler was operating with reasonable suspicion, the Court considers the facts that were known to him at the time. *White v. Pauly,* 580 U.S. 73, 77–78 (2017) (per curiam); *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021).

In this Court's ruling on the other Responding Officer and Administrative Defendant's Motion to Dismiss, the Court already determined that Paradise's claim of prolonged or illegal detention does not overcome the entitlement to qualified immunity. *See* ECF No. 33 at 5–9. At that time, Wheeler, while a responding officer to the request for police assistance, was not party to the Motion to Dismiss and was unaffected by that ruling. However, the Court adopts the reasoning laid out in the Court's previous order and applies it to the Motion for summary judgment here. *See id.*

7

Accordingly, Officer Wheeler is entitled to qualified immunity as to Paradise's illegal detention claim and the Court **GRANTS** his motion for summary judgment.

3. <u>Paradise's claim of conspiracy to interfere with right of access to court fails.</u>

The right of access to courts is a principle woven throughout the tapestry of the Constitution. Indeed, the Supreme Court has found the roots of this right in the privileges and immunities of citizens, codified in Article IV of the Constitution and the Fourteenth Amendment. *See Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983). In this respect, it is understood as one of the highest and most essential privileges of citizenship. *Chambers v. Balt. & Ohio R.R.*, 207 U.S. 142, 148 (1907). Indeed, in a society properly constructed under a social contract, "the right to sue and defend in the courts is the alternative of force." *Id.*

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). To succeed on a claim of conspiracy to deny access to courts, a plaintiff must show a conspiracy and one that "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). On a claim for civil conspiracy, a plaintiff must prove that the defendants agreed to commit an illegal act. *Thomas v. New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982). And a plaintiff must show facts that demonstrate "a preceding agreement, not merely parallel conduct that could as well be independent action." *See Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (per curiam).

Denial-of-access claims come in two forms: (1) forward-looking claims alleging "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," and (2) backward-looking claims alleging that official action has "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (*citing Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)).

"To maintain a backward-looking claim, a plaintiff must identify: (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*, 702 F.3d 806, 830–31 (5th Cir. 2012).

As explained in this Court's dismissal order, Paradise's claim of conspiracy against the Administrative Defendants was dismissed without prejudice as unripe because of the need for her claims against Wheeler to be resolved first. *See* ECF No. 33 at 9–12. Given that the Court is granting qualified immunity for Wheeler—as it has with all the other Defendants—and since there is no traceable setback to Paradise's lawsuit due to the deletion of body cam footage (Paradise's claims of excessive force and prolonged detention fail for qualified immunity reasons), Paradise's claim of conspiracy to interfere with right of access to court fails as well.[3]

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 35. Plaintiff's claims of excessive force, illegal detention, and interference with the right of access to court are **DISMISED with prejudice.**

**SO ORDERED** on this **12th day of February 2024.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[3] The Court notes that, even if a conspiracy to interfere claim could be brought, the caselaw in the Fifth Circuit is clear that denial of access to Courts is implicated when the ability to *file a suit* is delayed, prejudiced, or blocked altogether. *See Foster v. City of Lake Jackson,* 28 F.3d 425, 430 (5th Cir. 1994). In *Foster*, the Fifth Circuit explains that if a plaintiff can bring suit in normal capacity the right to access the courts is not implicated. *Id.* That is the case here as Paradise was able to file her lawsuit and no actions by Wheeler or any of the other defendants prevented this. Therefore, she cannot state a viable conspiracy claim against any of the Defendants.

9